# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Garmai R., | No. 24-cv-4125 (KMM/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| Peggy Petrovich, Director, National Visa Center; Catherine Rodriguez, Deputy Chief of Mission, U.S. Embassy, Monrovia, Liberia; Ur Jaddou, Director, United States Citizenship and Immigration Services; Antony Blinken, Secretary, United States Department of State; Merrick B. Garland, Attorney General, United States Department of Justice; Alejandro Mayorkas, Secretary, United States Department of Homeland Security, | |
| Defendants. | |

This matter is before the Court on Defendants'[1] Motion to Dismiss Plaintiff Garmai R's complaint pursuant to Federal Rules of Civil Procedures 12(b)(1) and 12(b)(6). Dkt. 5. For the reasons that follow, the motion is denied.

---

[1] The Defendants named in the Complaint are all government officials sued in their official capacities, and publicly available information indicates that most, if not all, of them have ceased to hold office during the pendency of this action. Consequently, the Defendants' successors are automatically substituted as parties, and "any misnomer not affecting the parties' substantial rights must be disregarded." Fed. R. Civ. P. 25(d).

## BACKGROUND

I.  **Relevant Statutory Framework**

   A.  **Visas for Relatives of Citizens and Lawful Permanent Residents**

"An alien needs an immigrant visa to enter and permanently reside in the United States." *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 46 (2014) (citing 8 U.S.C. § 1101(a)); *see also Dep't of State v. Muñoz*, 602 U.S. 899, 901 (2024) (same). The Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, establishes procedures for "citizens and lawful permanent residents (LPRs) of the United States [to] petition for certain family members—spouses, siblings, and children of various ages—to obtain immigrant visas." *Scialabba*, 473 U.S. at 45. The first step in the process of obtaining an immigrant visa for a family member is when the U.S. citizen or LPR "files a petition on behalf of a foreign relative, termed the principal beneficiary." *Id.* at 47 (citing 8 U.S.C. §§ 1154(a)(1)(A)(i), (a)(1)(B)(i)(l), (b); 8 C.F.R. § 204.1(a)(1)). This petition is submitted on Form I-130, Petition for Alien Relative.[2] The petitioner provides the United States Citizenship and Immigration Services (USCIS) with information establishing that she has a familial relationship with the beneficiary, and USCIS approves the petition if it satisfies all other requirements. *Scialabba*, 473 U.S. at 47.

Under the INA, some relatives of citizens or LPRs receive more favorable treatment than others in the visa-approval process based on established "immigration

---

[2] *See* U.S. Department of State, Bureau of Consular Affairs, Immigrant Visa Process, available at https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition.html.

categories." *Id.* at 46. "The most favored is for the 'immediate relatives' of U.S. citizens—their parents, spouses, and unmarried children under the age of 21." *Id.* at 47. Such immediate relatives of U.S. citizens "can apply for and receive a visa as soon as a sponsoring petition is approved." *Id.* at 47–48.

Other relatives are sorted into so-called "'preference' categories . . . for 'family-sponsored immigrants,'" including "distant or independent relatives of U.S. citizens, and certain close relatives of LPRs." *Id.* at 46. They are divided into the following categories:

> F1: the unmarried, adult (21 or over) sons and daughters of U.S. citizens;
>
> F2A: the spouses and unmarried, minor (under 21) children of LPRs;
>
> F2B: the unmarried, adult (21 or over) sons and daughters of LPRs;
>
> F3: the married sons and daughters of U.S. citizens;
>
> F4: the brothers and sisters of U.S. citizens.

*Id.* at 46–47 (citing 8 U.S.C. §§ 1151(a)(1), 1153(a)(1)–(4)). Unlike those in the immediate-relatives category, family members in these preference categories are not eligible to receive a visa right after their I-130 applications are approved. *Id.* at 47. Instead, "the number of visas issued each year in the five family preference categories" is capped, so a beneficiary "is placed in a queue with others in her category" based on the date the petition was filed with USCIS. *Id.* at 48. "The system is thus first-come, first-served within each preference category, with visas becoming available in order of priority date." *Id.* Each month, "the Department of State sets a cut-off date for each family

preference category, indicating that visas . . . are available for beneficiaries with priority dates earlier than the cut-off." *Id.* (citing 8 C.F.R. § 245.1(g)(1); 22 C.F.R. § 42.51(b)).

After USCIS approves an I-130 petition, the matter is transferred to the Department of State's National Visa Center (NVC) for processing. *See* 8 U.S.C. § 1154(b); 8 C.F.R. § 204.2(d)(3); *see also* https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html. Once fees are paid and the petitioner or beneficiary provides all required documentation, the NVC will treat the alien beneficiary as "documentarily qualified." 22 C.F.R. § 40.1(h); *see* https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html. This means that the alien beneficiary is "qualified to apply formally for an immigrant visa." 22 C.F.R. § 40.1(h). At that point, the alien beneficiary can apply for the visa and have an interview with a consular official. 22 C.F.R. § 42.62. Following the in-person interview with the consular official, the officer may issue the visa or refuse to do so. 8 U.S.C. § 1201(a).

### B. The Child Status Protection Act

As the immigration categories referred to above make clear, the age of a petitioner's child can impact visa availability. Under the INA, a "child" is an "unmarried person under twenty-one years of age." 8 U.S.C. § 1101(b)(1). Recall that unmarried children of U.S. citizens under the age of twenty-one are considered "immediate relatives" under the INA, and the priority-date procedure for the preference categories does not apply to immediate relatives. By contrast, unmarried offspring of LPRs who are

4

under the age of twenty-one fall into the F2A category, and the *adult* sons and daughters of U.S. citizens and LPRs fall into the F1 and F2B categories, respectively. Relatives in the F1, F2A, and F2B family preference categories are not able to receive a visa without waiting in a generally lengthy queue. So, a "child" of a citizen or LPR may be under twenty-one years of age when the process for obtaining a visa begins and then become an adult before a visa is available for his or her family preference category.

Because immigration agencies experience significant backlogs in processing applications and children of citizens and LPRs may age out of "child" status while their visa applications are pending, Congress passed the Child Status Protection Act (CSPA). *See Scialabba*, 573 U.S. at 50–51. Under the CSPA, the child of a U.S. citizen seeking to immigrate as an "immediate relative" meets the under-twenty-one age requirement by "using his age on the date the initial petition was filed." *Id.* at 51 (cleaned up) (citing 8 U.S.C. § 1151(f)(1)). Thus, "[i]f an alien was young when a U.S. citizen sponsored his entry, then Peter Pan-like, he remains young throughout the process." *Id.*

The CSPA also addresses this aging-out scenario in the context of offspring of LPRs—namely, where the noncitizen offspring of an LPR qualifies as a "child" for purposes of the immigration laws when the application is filed, and therefore falls into family preference category F2A, but ages out before a visa becomes available. Under CSPA:

> The determination of whether such an alien satisfies the immigration law's age requirement—that is, counts as under 21—shall be made using—

5

> (A) the age of the alien on the date on which an immigrant visa number becomes available for such alien. . .; reduced by
>
> (B) the number of days in the period during which the applicable petition described in paragraph (2) was pending.

*Scialabba*, 573 U.S. at 52 (cleaned up) (quoting 8 U.S.C. § 1153(h)(1)). The petition described in § 1153(h) is "an F2A petition filed on [the child's] own behalf." *Scialabba*, 573 U.S. at 52–53. In this way, the CSPA partially protects the child of an LPR from "aging out" based on administrative delay, but it does not exclude the time that the "alien spends simply waiting for a visa to become available." *Scialabba*, 573 U.S. at 73 ("[P]rincipal beneficiaries of F2A petitions, can still 'age out'—in other words, turn 21, notwithstanding § 1153(h)(1)'s dual age adjustments—prior to receiving an opportunity to immigrate."). So, for the noncitizen child of a U.S. citizen, the age of the child used to determine their immigration category is their age on the date the petition is filed, 8 U.S.C. § 1151(f)(1), and the age of a child of an LPR who turns 21 while the application is pending is determined based on the date when a visa becomes available minus the length of time the applicant waited, 8 U.S.C. § 1153(h)(1).

But the question at the heart of the dispute in this case concerns a slightly different problem of child beneficiaries potentially "aging out." How does the CSPA handle the scenario in which the parent of an alien child seeks an F2A visa on the child's behalf while the parent is an LPR, and then while that F2A petition is pending, two things occur: (1) the parent becomes a citizen through naturalization and (2) the child ages out? Section 1151(f) addresses these circumstances as follows:

> In the case of a petition . . . initially filed for an alien child's classification . . . based on the child's parent being [an LPR], if the petition is later converted, due to the naturalization of the parent, to a petition to classify the alien as an immediate relative under subsection (b)(2)(A)(i), the determination described in [§ 1153(f)(1)] *shall be made using the age of the alien on the date of the parent's naturalization*.

8 U.S.C. § 1151(f)(2) (emphasis added).

Here, the parties disagree over the proper interpretation of the italicized phrase above. And that disagreement is central to this case because Plaintiff filed a visa petition for her minor son while Plaintiff was a lawful permanent resident. Plaintiff later became a naturalized U.S. citizen, but by then her son was over 21. Defendants reclassified the visa application category for Plaintiff's son as falling within family beneficiary category F1 (adult son of a U.S. citizen). This forced Plaintiff's son into the queue, where he was required to wait for a visa to become available based on his priority date. Plaintiff contends that the proper reading of § 1151(f)(2) requires her son to reclassified as an "immediate relative" of a United States citizen.

## II.    Factual Allegations

The Court accepts as true the following allegations. Plaintiff Garmai R ("Plaintiff" or "Ms. R") is now a naturalized United States citizen. Compl. ¶¶ 6, 36. Before becoming a citizen, Ms. R was in the United States as an LPR. *Id.* ¶ 26. On April 13, 2020, while she was an LPR, and before she applied for naturalization, Plaintiff filed a Form I-130 Petition for Alien Relative on behalf of her son, Jackson F ("Jackson"). *Id.* When Ms. R filed the Form I-130 petition, Jackson was 17 years old. *Id.* ¶ 42(b).

7

On February 9, 2022, Ms. R filed a Form N-400 Application for Naturalization. *Id.* ¶ 27. On February 22, 2023, her naturalization application was erroneously denied, and she requested a hearing regarding the naturalization decision by filing Form N-336. *Id.* ¶ 30. Meanwhile, Ms. R also responded to a request for evidence from USCIS regarding the Form I-130 petition for Jackson. USCIS sought information regarding Jackson's late-registered birth certificate and DNA testing, among other things. *Id.* ¶¶ 28–29. On April 26, 2023, after it had been pending for 1108 days, the Form I-130 petition Ms. R filed on Jackson's behalf was approved. *Id.* ¶ 31. At that time, Jackson was 20 years old. *Id.* ¶ 42(c).

The NVC received the I-130 petition on April 30, 2023, and categorized Jackson's visa application as F2A (for a minor child of lawful permanent resident). *Id.* ¶ 33. The visa application "was determined to be documentarily qualified on July 10, 2023." *Id.* ¶ 34. On September 21, 2023, Ms. R became a naturalized U.S. citizen. *Id.* ¶ 36. By the time Ms. R became a citizen, Jackson was 21 years old. *See* Defs.' Mem. 5 n.1, Dkt. 7.

Approximately one year later, on September 18, 2024, Jackson attended his visa interview at the U.S. Embassy in Monrovia, Liberia. Compl. ¶ 37. At the interview, Jackson received a visa "refusal" sheet. While named a "refusal," the post-interview reality was that the agency could still give Jackson a visa and in that context, the agency requested additional information, including: (1) DNA testing results; (2) an updated passport; and (3) an updated Form I-864, Affidavit of Support, for Ms. Rennie, with her own 2023 tax documents and 2023 W-2; and (4) a Form I-864, Affidavit of Support, for a joint sponsor, with 2023 tax documents and a W-2. *Id.* ¶ 38. The request for a joint-

8

sponsor affidavit of support was an error because Ms. R's own income exceeds 125% of the federal poverty guidelines. In addition, because Jackson's passport does not expire until 2028, he could not update it. *Id.* ¶ 39. The other documentation requested was provided to Defendants. *Id.* ¶ 40.

On October 1, 2024, the Embassy in Monrovia notified Jackson that his visa category had been switched from F2A to F1, adult child of U.S. citizen. *Id.* ¶ 41. However, Plaintiff alleges that when the adjusted-age formula under the CSPA is applied to Jackson's case, his adjusted age remains under the age of twenty-one. *Id.* ¶ 42. Applying the CSPA formula, Plaintiff asserts that he may subtract the 1108 days that his visa application was pending between the filing of the Form I-130 petition on April 13, 2020 and the day that petition was approved on April 26, 2023. *Id.* ¶ 42(b)–(e). Plaintiff alleges that his CSPA-adjusted age is 17 years, 10 months, and 22 days. *Id.* ¶ 42(f).

Because Jackson's CSPA-adjusted age is under twenty-one and because Plaintiff naturalized as a U.S. citizen, Plaintiff asserts that Jackson is eligible to immigrate under the immediate relative category if he seeks to acquire an immigrant visa within one year of the visa availability date. *Id.* ¶ 43. Jackson successfully sought to acquire a visa within a year of the availability date because he has already submitted Form DS-260 and attended his immigrant visa interview. *Id.* ¶ 44. But Plaintiff alleges that Defendants have failed to complete the ministerial acts that would result in allowing Jackson to pursue his immigrant visa. *Id.* ¶ 45.

Ms. R alleges that Defendants have an obligation to apply the provisions of the CSPA to the visa petition for Jackson. She also alleges that Defendants failed to follow a

9

nondiscretionary duty under the law when they categorized his visa as F1 (adult child of U.S. citizen) instead of F2A (minor child of lawful permanent resident). *Id.* ¶¶ 52–55. Plaintiff seeks relief under the Administrative Procedure Act (APA), 5 U.S.C. § 701, *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361, to compel agency officers and employees "to perform duties owed to [Ms. R]." *Id.* ¶ 3. Plaintiff seeks a declaratory judgment indicating that the CSPA applies to Jackson's case and an order for Defendants to pay the costs of this suit and Ms. R's reasonable attorney's fees. *Id.*, Prayer for Relief ¶¶ 1–4.

## DISCUSSION

Defendants seek dismissal of the Complaint arguing: (1) that she lacks standing to challenge the refusal of her son's immigrant visa application; (2) she fails to state a claim for relief under the APA or the Mandamus Act because the relevant agency has already made a final decision; (3) judicial review of the refusal to issue Jackson a visa is foreclosed by the doctrine of consular nonreviewability; and (4) Defendants' correctly interpreted and applied § 1151(f)(2) when it reclassified Jackson's visa application status as F1 (adult son of U.S. citizen).

**I.    Legal Standard**

Defendants bring their motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(1) motion challenges the Court's subject-matter jurisdiction over an action, and Rule 12(b)(6) motion raises the issue of whether a complaint has failed to state a claim.

### A. Subject-Matter Jurisdiction

A plaintiff must show that she has standing to sue to demonstrate that there is subject-matter jurisdiction over the claim. *Quiles v. Union Pac. R.R. Co., Inc.*, 4 F.4th 598, 603 (8th Cir. 2021); *see also Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) ("[I]f a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction."). "To establish standing to sue in federal court, a plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *McNaught v. Nolen*, 76 F.4th 764, 768–69 (8th Cir. 2023) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), first courts "must distinguish between a 'facial attack' and a 'factual attack'" on the courts' jurisdiction. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). A facial attack assumes that, even if all the facts alleged in the Complaint are true, the court still lacks subject-matter jurisdiction; a factual attack, on the other hand, "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, may be considered." *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). When the defendant raises a facial attack, courts apply the same standard involved in a motion to dismiss under Rule 12(b)(6). *Osborn*, 918 F.2d at 729 n.6. Here, Defendants raise a facial attack to Plaintiff's standing. Defs.' Mem. 6. Therefore, in evaluating any issues of standing, the court accepts the factual allegations in the complaint as true and determines whether they adequately allege the court has subject-matter jurisdiction over the case. *Menchaca*, 613 F.2d at 511.

11

### B. Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard does not require the inclusion of "detailed factual allegations" in a pleading, but the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In applying this standard, the Court must assume the facts in the complaint to be true and take all reasonable inferences from those facts in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986); *see Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019). But the Court need not accept as true any wholly conclusory allegations or legal conclusions that the plaintiff draws from the facts pled. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

## II. Standing

Defendants first argue that Plaintiff lacks standing and seek dismissal for lack of jurisdiction on that basis. Defendants assert that Plaintiff fails to allege any injury-in-fact because her Complaint asserts only the legal rights and interests of her son Jackson, not her own. The Court disagrees for two reasons.

First, the Court observes that other courts have found parents have standing where they have filed petitions on behalf of their noncitizen children and assert a right to have a preference category determined in accordance with the law. *Dekovic v. Tarango*, No. 23-

cv-02728-REB, 2024 WL 4346415, at *3–4 (D. Colo. Sept. 30, 2024) (finding standing to challenge re-classification of application from one category to another); *Yan Won Lioa v. Holder*, 691 F. Supp. 2d 344, 350–51 (E.D.N.Y. 2010) (discussing parents' standing to bring a challenge to USCIS's alleged failure to apply the appropriate priority date under the CSPA); *Morris v. Gonzales*, 2007 WL 2740438, at *6 (E.D. Pa. Sept. 19, 2007) (finding that the petitioner had standing to seek review though the noncitizen beneficiary did not).

Second, Defendants' standing arguments improperly conflate decisions going to the merits of constitutional claims with the injury-in-fact prong of the standing inquiry. For example, Defendants cite *Trump v. Hawaii*, 585 U.S. 667 (2018), and claim that Plaintiff lacks standing because her son is a third party who is aggrieved by the decision regarding his visa, and he has no constitutional right to enter the United States. Defs.' Mem. 8. But the Supreme Court's decision in *Trump v. Hawaii* actually supports a finding of standing in this case. The Court there found that the plaintiffs had Article III standing to challenge a presidential proclamation prohibiting entry into the United States of persons coming from countries with predominantly Muslim populations. *Id.* at 698–99. In doing so, the Court explicitly found that the American plaintiffs suffered a concrete harm sufficient for Article III standing purposes: "the alleged real-world effect that the Proclamation has had in keeping them separated from certain relatives who seek to enter the country." *Id.* at 698. Further, the Court "recognized that an American individual who has 'a bona fide relationship with a particular person seeking to enter the country . . . can legitimately claim concrete hardship if that person is excluded.'" *Id.* at 698–99 (quoting

13

*Trump v. IRAP*, 582 U.S. 571, 583 (2017)). The same is true here—Ms. R is a citizen with a bona fide relationship with Jackson, Jackson seeks to enter the United States, and the Defendants' application of the CSPA has allegedly caused Ms. R concrete hardship based on the extended period she will have to wait to be reunited with him here.

Similarly, Defendants suggest that in *Department of State v. Muñoz* the Supreme Court foreclosed any argument that a United States citizen has standing to assert a claim related to a petition for a visa on behalf of a noncitizen family member living abroad. Defs.' Mem. 8; Defs.' Reply 1–2, Dkt. 11. But, again, Defendants confuse a question of the merits of the constitutional due process claim at issue in *Muñoz* with the existence of concrete and particularized harm for the purposes of standing. In *Muñoz*, the Court held that the U.S. citizen plaintiff did not have a fundamental liberty interest in having her noncitizen spouse being admitted to the country, so she could not prevail on either a procedural or substantive due process claim. 602 U.S. at 909. But that is a distinct question from the existence of harm sufficient for an injury-in-fact. Indeed, *Muñoz* does not discuss standing at all; instead, the *Muñoz* Court faulted the plaintiff for failing to allege an essential element of a due process claim. *See Raihanoune v. United States Citizenship & Immigr. Servs.*, No. 1:24-CV-219 (PTG/IDD), 2025 WL 510235, at *3 (E.D. Va. Feb. 13, 2025) ("[T]he Supreme Court could not have reached the merits of *Muñoz*, if the plaintiff, the spouse of a visa applicant, did not have Article III standing."). In sum, the Court disagrees that Ms. R lacks standing in this matter.

Defendants' motion to dismiss for lack of jurisdiction is denied.

**III.   Merits**

Defendants argue that even if the Court finds Plaintiff has standing, the Complaint should still be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Specifically, they argue: (1) Ms. R fails to state any claim under the APA or the Mandamus Act; (2) her claims are barred by the doctrine of consular nonreviewability; and (3) her claim depends on an incorrect interpretation of the CSPA. For the reasons that follow, the Court concludes that the Complaint states a plausible claim.

**A. Finality**

With respect to Defendants' first two arguments—the APA/Mandamus question and the issue of consular non-reviewability—the parties largely focus on the "finality" of the agency's action. The Court is not convinced that the Defendants' articulation of the "finality" of the decision is correct, nor that the doctrine of consular non-reviewability would apply. However, for reasons explained below, the Court is also not convinced that the proper framing of this case is one of unreasonably delayed agency action.

In referencing the APA, Plaintiff frames the issue in her Complaint as one of agency action unreasonably delayed. She asserts an APA claim under 5 U.S.C. § 706(1). Compl. ¶¶ 24–25 (citing 5 U.S.C. §§ 555(b) and 706(1), and *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984)). Under § 706(1) a federal court has the power to "compel agency action . . . unreasonably delayed." And agencies are required to conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude

a matter presented to it."). "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); *Al Jabari v. Chertoff*, 536 F. Supp. 2d 1029, 1034 (D. Minn. 2008) (discussing unreasonable delay claim where DHS regulations imposed a duty to complete the plaintiff's security check and § 555(b) required it to be completed within a reasonable time).

Faced with the Plaintiff's framing of the APA issue in this case as one of unreasonably delay, Defendants argue that the Complaint fails to state an unreasonable delay claim because the State Department made a final adjudication of the matter when Jackson received a "refusal" at the end of his visa interview, so there is nothing for the Court to compel. Defs.' Mem. at 9–10. However, as alleged in the Complaint, the "refusal" sheet Jackson was provided at the conclusion of his consular interview was not really a final decision denying Jackson a visa. In fact, the purported refusal in this case was accompanied by a request for several categories of additional evidence. The agency, therefore, continued to act on Jackson's application after the so-called refusal. In a comparable context, this Court has previously observed that "[s]imply describing the decision as final does not make it so," and found the State Department's decision to place a visa applicant's case into "administrative processing" following a "refusal" at the completion of a consular interview was not a final decision barring agency action. *Hassan v. Dillard*, 758 F. Supp. 3d 973, 981–82 (D. Minn. 2024). For the same reasons, the Court here cannot accept Defendants' invitation to find that the "refusal" itself was final agency action that would preclude any unreasonable delay claim.

Likewise, the Court disagrees with Defendants' assertion that the doctrine of consular non-reviewability bars any unreasonable delay claim in this case. Where a plaintiff does not challenge the outcome of a visa-denial, but only the delay in the agency reaching a final adjudication, consular nonreviewability does not establish a procedural barrier to an APA unreasonable-delay claim. *Hassan*, 785 F. Supp. 3d at 983 (rejecting the government's argument regarding finality in the context of consular nonreviewability and stating "the matter before the agency has not been concluded because the application remains in administrative processing and the State Department has indicated that the application is awaiting a final adjudication"); *see also Arerrash B.T. v. Blinken*, No. 22-cv-1300 (WMW/JFD), 2023 WL 2273158, at *2 (D. Minn. Feb. 28, 2023) ("[T]he doctrine of consular non-reviewability precludes review only of 'final visa determinations' and 'does not apply to challenges regarding decisions that are not yet final.'") (quoting *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 2d 155, 159 (D.D.C. 2022)).

Because the Court does not find the Defendants' arguments for dismissal in this context compelling, the motion to dismiss the Complaint on these grounds is denied. The Court also understands that Defendants raised these arguments in response to the framing of Plaintiff's claim that appears in the Complaint—i.e., Plaintiff's assertion that the Court should review the matter as one of agency action unreasonable delayed under 5 U.S.C. § 706(1). However, Plaintiff's theory of the case as one of unreasonable delay is somewhat of an imperfect fit for the challenge she is raising. Here, the State Department has taken action on Jackson's visa application. It did so based on its interpretation of the

CSPA, and as a result of that interpretation, it recategorized Jackson's family preference category from F2A to F1 instead of treating him as an "immediate relative." This has, in a very practical sense, caused a delay—it will take Jackson several months or even years longer to receive any visa. But that delay is a consequence of the agency's decision, not the product of delay while Jackson's visa application sat unaddressed. The parties have not directed the Court to any cases in their briefing treating this kind of delay—a delay caused by miscategorization—as the type of delay that can be addressed through the APA under § 706(1).

While Plaintiff's case seems to be an odd fit for an unreasonable delay claim under § 706(1), she also points in her response to the motion to dismiss at another aspect of the APA that might be a more apt framework. Specifically, Plaintiff asserts that "Defendants' interpretation of the CSPA is both arbitrary and capricious and ultimately fails to consider 'an important aspect of the problem.'" Pl.'s Opp'n 3 (citing *Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1150 (9th Cir. 2002)). Under another provision of the APA, not referenced in Plaintiff's Complaint, reviewing district courts "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Here, as hinted at in Plaintiff's opposition to the motion, Plaintiff's challenge to the Defendants' interpretation of the CSPA appears to be a claim that Defendants have acted arbitrarily, capriciously, or otherwise contrary to the law. Indeed, that was the nature of the claim in one of the principle cases on which Plaintiff relies in this proceeding, *Cuthill v. Blinken*, 990 F.3d 272 (2d Cir. 2021). *Cuthill* presented an

18

almost identical factual scenario. But, as the appellate records in *Cuthill* make clear, the plaintiff alleged that the State Department had acted arbitrarily and capriciously in its interpretation of the CSPA. *Cuthill v. Blinken*, No. 19-3138, Dkt. 37 (2d Cir. Jan. 9, 2020) (Appellant's Appendix B, Complaint ¶¶ 37–44); *id.*, No. 19-3138, Dkt. 2 (2d Cir. Sept. 27, 2019) (District Ct. Order on Mot. to Dismiss and for Summ. J at 12–13).

In sum, the Court finds the arguments for dismissal of an unreasonable delay claim presented in the Defendants' motion to dismiss to be unpersuasive, and therefore denies that motion. Nevertheless, the Court has some concerns about whether the Plaintiff's framing of the APA claim as one of "unreasonable delay" is a suitable analytical model. The alternative "arbitrary and capricious" framing mentioned in Plaintiff's opposition may (or may not) be the better fit, but it has not been adequately alleged in the Complaint as currently constituted. The Court leaves it to the parties to determine what next steps, if any, are appropriate to address these concerns.

### B. Proper Interpretation of the CSPA

Finally, Defendants argue that Ms. R's Complaint should be dismissed because her claim depends on a flawed interpretation of the CSPA. Defs.' Mem. 12–21. Rather than engage in a prolonged statutory analysis at this stage of the proceedings, the Court simply observes that it does not share Defendants' certitude that the CSPA plainly and unambiguously refers only to the biological age of the beneficiary in 8 U.S.C. § 1151(f)(2). Far more compelling are the in-depth statutory analyses of the Second Circuit in *Cuthill*, 990 F.3d at 278–85, and the Ninth Circuit in *Tovar v. Sessions*, 882 F.3d 895, 899–905 (9th Cir. 2018). Both cases look closely at the statutory text in the

context of surrounding provisions, the statutory scheme and the structure of the CSPA, and Congress' purpose in enacting the CSPA. And both cases convincingly explain why the best reading of "age" in § 1151(f)(2) is that it unambiguously expresses the intent of Congress to refer to age as calculated under 8 U.S.C. § 1153(h)(1). *Cuthill*, 990 F.3d at 285–86; *Tovar*, 882 F.3d at 904–05. So at this stage, the Court declines the Defendants' invitation to find that the statutory interpretation underlying Ms. R's case is fatally flawed.

## ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED THAT** Defendants' Motion to Dismiss (Dkt. 5) is **DENIED**.

Date: June 16, 2025

*s/Katherine Menendez*
Katherine Menendez
United States District Judge