# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Garmai Rennie,

      Plaintiff,

v.

Evan McCarthy, Director, National Visa Center; Joseph Zadrozny, Deputy Chief of Mission, U.S. Embassy, Monrovia, Liberia; Marco Rubio, U.S. Secretary of State; Joseph B. Edlow, Director of U.S. Citizenship and Immigration Services; Todd Blanche, U.S. Attorney General; and Markwayne Mullin, U.S. Secretary of Homeland Security,[1]

      Defendants.

No. 24-cv-4125 (KMM/ECW)

**ORDER**

Plaintiff Garmai Rennie is a naturalized United States citizen who sought to sponsor her son's immigrant visa while she was a lawful permanent resident. After Ms. Rennie's naturalization, Defendants reclassified her son's pending visa petition into a category with a longer processing time. Ms. Rennie brought this action alleging that Defendants' decision to reclassify her son's visa petition violated the Administrative Procedure Act (APA). (*See* Dkt. 19 (Amended Complaint).) The matter is now before the Court on the parties' cross-motions for summary judgment, which both raise the issue of whether the term "age" in 8 U.S.C. § 1151(f)(2) incorporates the age-reduction formula enumerated in 8 U.S.C. §

---

[1] These individuals are automatically substituted in as Defendants pursuant to Federal Rule of Civil Procedure 25(d).

1

1153(h)(1). For the reasons discussed below, the Court grants Plaintiff's Motion for Summary Judgment (Dkt. 38) and denies Defendants' Motion for Summary Judgment (Dkt. 34).

## BACKGROUND

The Court begins by summarizing the immigration laws that provide a framework for understanding the facts and core legal issue raised in this case.

### I.    Family-Based Visas

Under the Immigration and Nationality Act (INA), lawful permanent residents (LPRs) and citizens of the United States may petition to obtain immigrant visas for their family members. *See* 8 U.S.C. §§ 1151, 1154. There are four types of family-based visas that are relevant here:

- **Immediate-relative visa**: for unmarried minor (under 21 years old) sons and daughters of citizens, 8 U.S.C. § 1151(b)(2)(A)(i);

- **F1 visa**: for unmarried adult (21 or older) sons and daughters of U.S. citizens, *id.* § 1153(a)(1);

- **F2A visa**: for minor (under 21 years old) sons and daughters of LPRs, *id.* § 1153(a)(2)(A); and

- **F2B visa**: for unmarried adult (21 or over) sons and daughters of LPRs, *id.* § 1153(a)(2)(B).

In this context, the term "child" refers to "an unmarried person under twenty-one years of age[.]" *Id.* § 1101(b)(1).

To begin the process of obtaining a family-based visa for a family member (beneficiary), the sponsoring citizen or LPR files a Form I-130 (or "visa petition"), Petition

2

for Alien Relative, with U.S. Citizenship and Immigration Services (USCIS) on the beneficiary's behalf. *Id.* § 1154(a)(1)(A). As part of its review, USCIS confirms the claimed relationship between the sponsor and beneficiary. *Id.* §§ 1151(b)(2)(A)(i), (c). If everything is in order, USCIS eventually approves the I-130 petition.

For beneficiaries seeking an immediate-relative visa (IR visa) through a parent who is a citizen, an approved I-130 petition results in the issuance of a visa relatively soon thereafter. Because IR visas are not subject to a quota, *id.* § 1151(b)(2)(a)(i), they are readily available and are therefore processed without significant delay. On the other hand, Congress has imposed limits on the annual number of F1, F2A, and F2B visas available, *see id.* § 1153(a), resulting in "demand regularly exceed[ing] the supply" of these visa types, *Cuthill v. Blinken*, 990 F.3d 272, 275 (2d Cir. 2021) (quoting *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 48 (2014)). Thus, for those categories of beneficiaries, an approved I-130 petition "results not in getting a visa, but only in [being] . . . placed in a first-come, first-served queue with others in her category in order of 'priority date'—that is, the date on which the visa petition was filed." *Id.* at 274–75. Each month, the Department of State publishes a visa bulletin with the applicable priority date, which indicates that beneficiaries who filed their I-130s on or before that date have become eligible to apply for a visa. *See, e.g.*, Visa Bulletin for July 2026, U.S. Dep't of State (June 2, 2026), https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2026/visa-bulletin-for-july-2026.html (last visited Aug. 5, 2026).

Throughout this process, the beneficiary's age matters greatly. "A minor son or daughter can obtain a visa much faster than an adult son or daughter can" because "[t]here

3

is great demand for visas by adult sons and daughters of citizens and LPRs, which results in long queues for F1 and F2B visas." *Cuthill*, 990 F.3d at 275. The delay, which comes from both "the time that USCIS takes to process the petition and the time that it takes for a visa to become available," can be many years. *Id.* at 276 (paratheses and number omitted); *see id.* at 275 (stating that the F2B visa queue for an adult son or daughter of an LPR was "over five years long as of January 2021"); *see also Teles de Menezes v. Rubio*, 156 F.4th 1, 5 (1st Cir. 2025) (noting that the wait for some beneficiaries could be up to thirteen years). Predictably, this became a problem because the beneficiary's age was determined at the time the visa became available, causing many child beneficiaries to "age[] out" of their IR or F2A visa eligibility. *Cuthill*, 990 F.3d at 275. "In other words, by the time child beneficiaries might become eligible to obtain the visas for which they originally petitioned, those beneficiaries might no longer be minors and thus no longer eligible for those visas." *Id.*

## II.    Child Status Protection Act

In 2002, Congress passed the Child Status Protection Act (CSPA) to remedy the aging-out problem. Pub. L. No. 107-208, 116 Stat. 927 (2002). "[V]ia several interrelated provisions[,]" *Cuthill*, 990 F.3d at 276, the CSPA provides a modified formula for calculating a beneficiary's age for purposes of their visa classification: subtract the duration that USCIS takes to process a beneficiary's petition from their biological age at the time that a visa becomes available for them. *See* 8 U.S.C. § 1153(h)(1). This is referred to as the applicant's "statutory age." In doing so, the CSPA fixed the aging-out problem in a variety of common scenarios that arise in this context. For example,

4

> [f]or F2B applicants, the CSPA provides that if the sponsor naturalizes while the application is pending, the adult beneficiary has the choice of staying in the F2B queue or transferring to the F1 queue, which covers adult sons and daughters of citizens. Again, Congress provided that the applicant retains her original priority date regardless of which queue she chooses.

*Cuthill*, 990 F.3d at 276–77 (citations omitted). However, the CSPA's solution for F2A applicants or minor children of LPRs whose sponsor's status changes from LPR to citizen throughout the visa process is not as straightforward. As explained by the Second Circuit,

> [t]he CSPA does not have an analogous provision for an F2A beneficiary whose sponsor naturalizes. However, the statute contemplates that the F2A petition would be converted to a petition for an [IR] visa. The provision at issue in this case—8 U.S.C. § 1151(f)(2)—provides that '[i]n the case of [an F2A petition], if the petition is later converted, due to the naturalization of the parent, to a petition to classify the alien as an immediate relative . . . the determination [of whether the beneficiary is a minor] shall be made using the age of the alien on the date of the parent's naturalization.'

*Id.* at 277 (quoting 8 U.S.C. § 1151(f)(2)). Put in other words, § 1151(f)(2) allows a beneficiary under 21 years old at the time of their sponsor's naturalization to transfer their visa to the IR category. However, the question that arises from this statutory language—and is at issue in this case—is whether "'the age of the [beneficiary] on the date of the parent's naturalization' in § 1151(f)(2) [should] be interpreted as the statutory age or as the biological age on that date[.]" *Id.*

### III.   Factual and Procedural Background

The relevant facts are undisputed. In May of 2016, Ms. Rennie, a Liberian national, immigrated to the United States, and she eventually became a legal permanent resident.

(*See* Dkt. 39 at 17.) On April 13, 2020, Ms. Rennie began the process of bringing her son, Jackson Fumbah, to the United States by filing a Form I-130 with USCIS on his behalf. (Dkt. 19 ¶ 27.) Mr. Fumbah's biological age at filing was 17 years old. (*Id.* ¶ 43(a); *see id.* ¶ 6 (stating Mr. Fumbah's date of birth).) Meanwhile, in February 2022, Ms. Rennie began the naturalization process. (*Id.* ¶ 28.) Then, on April 26, 2023, after it had been pending for 1088 days,[2] Ms. Rennie's I-130 petition was approved. (*Id.* ¶ 32.) Mr. Fumbah was twenty years old at the time the I-130 was approved. (*Id.* ¶ 33).) Upon receipt of the approved I-130, the U.S. State Department's National Visa Center categorized Mr. Fumbah's immigrant visa application as an F2A, or that of a minor child of an LPR. (*Id.* ¶ 34.)

Then, on September 21, 2023, Ms. Rennie became a U.S. citizen. (*Id.* ¶ 37.) By this time, Mr. Fumbah was biologically over twenty-one years old. (*See id.* ¶ 6.) On October 1, 2024, the United States Embassy in Monrovia notified Mr. Fumbah that his visa category had been recategorized from F2A to F1, or that of an adult (over twenty-one years old) child of a citizen. (*Id.* ¶ 42.) According to the October 2024 Visa Bulletin, the priority date for F1 visa applicants was January 1, 2017 and would have resulted in substantial further waiting time, whereas an IR visa was immediately available. *See* Visa Bulletin for October 2024, U.S. Dep't of State (Sept. 3, 2024), https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2025/visa-bulletin-for-october-2024.html (last visited Aug.

---

[2] In her Amended Complaint, Ms. Rennie claims that the I-130 petition was pending for 1108 days (Dkt. 19 ¶ 43(e)), but this appears to be a calculation error that is not material to the Court's decision.

5, 2026). In other words, had Mr. Fumbah's application not been recategorized, he would have been eligible for a visa right away.

On November 5, 2024, Ms. Rennie filed this action alleging that Defendants' reclassification of Mr. Fumbah's visa application violated the APA. (Dkt. 1 (original Complaint); Dkt. 19 (Amended Complaint).) As relief, she seeks a declaration that the CSPA requires Defendants to categorize Mr. Fumbah's application according to his statutory age. (Dkt. 19 ¶¶ 48–52.)

## LEGAL STANDARDS

### *Summary Judgment*

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Cearley v. Bobst Gr. N. Am. Inc.*, 129 F.4th 1066, 1069 (8th Cir. 2025). The moving party must demonstrate that the material facts are undisputed. *Celotex*, 477 U.S. at 322. A fact is "material" only if its resolution could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Lankford v. City of Plumerville*, 42 F.4th 918, 921 (8th Cir. 2022). When the moving party properly supports a motion for summary judgment, the party opposing summary judgment may not rest on mere allegations or denials, but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256; *McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank*, 11 F.4th 702, 710 (8th Cir. 2021). A dispute of fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson*, 477 U.S. at 248. Courts must view the inferences to be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Becker v. City of Hillsboro*, 125 F.4th 844, 851 (8th Cir. 2025). "When considering [Ms. Rennie's] motion, the Court views the record in the light most favorable to [Defendants], and when considering [Defendants] motion, the court must view the record in the light most favorable to the [Ms. Rennie]." *Durand v. Fairview Health Servs.*, 230 F. Supp. 3d 959, 965 (D. Minn. 2017).

### Administrative Procedure Act

The APA authorizes federal courts to review final agency actions "for which there is no other adequate remedy" available. 5 U.S.C. § 704 (specifying which agency actions are available for review); *see id.* at § 702 (right of review); *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 813 (8th Cir. 2006). As such, "a reviewing court will set aside agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'." *Lackie v. Noe*, No. 24-3239, 2026 WL 2016239, at *3 (8th Cir. July 13, 2026) (quoting 5 U.S.C. § 706(2)(a)). The court will also compel agency action unlawfully withheld. 5 U.S.C. § 706(1)–(2); *see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004).

### ANALYSIS

In support of their Motion, Defendants argue that the doctrine of consular nonreviewability precludes the Court's review of the government's decision to recategorize Mr. Fumbah's visa application. Alternatively, they argue that the provision of the CSPA that refers to "the age of the [beneficiary] on the date of the parent's naturalization," 8

U.S.C. § 1151(f)(2), should be interpreted as the beneficiary's biological age. (Dkt. 34 at 14.) Ms. Rennie argues that the provision must be interpreted as the beneficiary's statutory age, as provided by 8 U.S.C. § 1153(h)(1). (Dkt. 39 at 5–6.)

## I.    Doctrine of Consular Nonreviewability

The doctrine of consular nonreviewability is a non-jurisdictional bar on "judicial review of a consular officer's denial of a visa[.]" *Dep't of State v. Muñoz*, 602 U.S. 899, 908, 908 n.4 (2024). It derives from the general rule that "Congress may delegate to executive officials the discretionary authority to admit noncitizens immune from judicial inquiry or interference," and that, when it does, such a decision "is final and conclusive." *Id.* at 907–08 (quotations omitted).

The premise of Defendants' argument is that the consular's decision to reclassify Mr. Fumbah's visa application is a "refus[al]" to issue the visa. (Dkt. 35 at 10.) But there has been no "denial of a visa," *see Muñoz*, 602 U.S. at 908, only a reclassification. Although the Eighth Circuit has not yet addressed the issue, the Court follows the First Circuit in rejecting the argument that "reclassification . . . is somehow the functional equivalent of a visa denial." *Teles de Menezes*, 156 F.4th at 10. The government has already decided that Mr. Fumbah is admittable, and the only question now is how to categorize his visa.

The Court is unpersuaded by Defendants' criticism of the First Circuit's holding on this point as "unmoored from the nature and purpose of the consular nonreviewability doctrine." (Dkt. 35 at 13.) While true that the doctrine "applies whenever Congress has 'delegate[d] to executive officials the discretionary authority to admit noncitizens immune from judicial inquiry or interference,'" Defendants have not explained how reclassification

is an exercise of the discretionary authority to admit, or to not admit, a particular noncitizen. (Dkt. 35 at 13 (quoting *Muñoz*, 602 U.S. at 907).) Instead, Defendants rely on two cases in which courts held that the consular-nonreviewability doctrine applied to bar judicial review of a visa reclassification. (*See id.* at 14 (citing *Chen v. Rice*, No. 07-cv-4462, 2008 WL 2944878 (E.D. Pa. July 28, 2008); *Pishdadiyan v. Clinton*, No. 11-cv-10723, 2012 WL 601907 (D. Mass. Feb. 7, 2012)).).). But both cases were decided before the *Muñoz* Court clarified the scope of the doctrine of consular nonreviewability, and the First Circuit's decision came after *Muñoz* had considered it. Moreover, the district courts in those cases applied the doctrine as a matter of jurisdiction, a notion that the Supreme Court has since rejected. *Muñoz*, 602 U.S. at 908 n.4 ("[T]he doctrine of consular nonreviewability is not jurisdictional[.]") (citing *Trump v. Hawaii*, 585 U.S. 667, 682-83 (2018)); *see also Teles de Menezes*, 156 F.4th at 9 (noting that the doctrine "is in reality a merits issue") (quotation omitted).

Having concluded that the doctrine of consular nonreviewability does not preclude consideration of Ms. Rennie's claim, the Court turns to the statutory-interpretation issue.

## II.   Statutory Interpretation

Defendants argue that Mr. Fumbah's visa application falls under the F1 category, for which there currently is a significant waiting time for an applicant with Mr. Fumbah's priority date. According to Defendants, Mr. Fumbah's visa type must be categorized according to his biological age on the date of Ms. Rennie's naturalization, which was over twenty-one years. On the other hand, Ms. Rennie argues that Mr. Fumbah's age should be

10

calculated using his statutory age according to the formula set forth in § 1153(h)(1). The

Court agrees with Ms. Rennie.

The relevant statutory provision states that

> [i]n the case of a petition under section 1154 of this title initially filed for an alien child's classification as a family-sponsored immigrant under section 1153(a)(2)(A) of this title, based on the child's parent being lawfully admitted for permanent residence, if the petition is later converted, due to the naturalization of the parent, to a petition to classify the alien as an immediate relative under subsection (b)(2)(A)(i), the determination described in paragraph (1) shall be made using *the age of the alien on the date of the parent's naturalization*.

8 U.S.C. § 1151(f)(2) (emphasis added). Of course, "age" typically refers to a person's

biological age. *See Cuthill*, 990 F.3d at 279 (stating that "[t]he term 'age,' standing in

isolation, normally means biological age"). However, when discerning the meaning of a

term as used in a statute, the Court "must read the words 'in their context and with a view

to their place in the overall statutory scheme.'" *King v. Burwell*, 576 U.S. 473, 486 (2015)

(quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).

All four courts of appeals to have addressed this question agree that in its context,

"age" as used in § 1151(f)(2) refers to a beneficiary's statutory age. *See Cuthill*, 990 F.3d

at 280–84; *Teles de Menezes*, 156 F.4th at 15–18; *Tovar v. Sessions*, 882 F.3d 895, 901

(9th Cir. 2018); *Dekovic v. Rubio*, 169 F.4th 1002, 1014–15, 1020 (10th Cir. 2026). The

Court agrees. While this issue is a complex one, the Court finds it unnecessary to repeat

the thorough reasoning set forth in those decisions here. Instead, the Court highlights a few

critical points.

11

In reaching this conclusion, the Second Circuit explained how § 1153(h)(1), which sets forth a formula for calculating the age of an F2A applicant, must be understood to interact with § 1151(f)(2), which concerns the potential reclassification of an F2A applicant to an IR applicant:

> First, 8 U.S.C. § 1101(b)(1) provides a general definition that, subject to certain complexities not relevant here, a "child" is "an unmarried person under twenty-one years of age." There can be no dispute that this refers to biological age.
>
> Second, 8 U.S.C. § 1153(a)(2)(A) provides that F2A visas can be given to "children of [LPRs]." As we just saw, the default definition of "child" is a person under 21 years in biological age. Section 1153(a)(2)(A) thus appears to require that F2A visa beneficiaries must be under 21 in biological years.
>
> But the third provision, 8 U.S.C. § 1153(h)(1), explicitly requires a different mechanism for determining a beneficiary's age for the purposes of F2A visas and one other visa category not relevant here. It provides:
>
>> For purposes of [§ 1153(a)(2)(A), the provision discussed in the previous paragraph and which applies exclusively to F2A visas,] a determination of whether an alien satisfies the age requirement in [§ 1101(b)(1), the first provision discussed above which provides for a default definition of 'child,'] shall be made using —
>>
>>> (A) the age of the alien on the date on which an immigrant visa number becomes available for such alien . . . ; reduced by
>>>
>>> (B) the number of days in the period during which the [F2A petition] was pending.
>
> *Id.* In other words, the CSPA dictates that, in determining whether an F2A beneficiary is a minor, we use a statutory formula rather than pure biological age.

*Cuthill*, 990 F.3d at 279 (alterations in original).

12

In expounding on the reasoning from *Cuthill*, the First Circuit pointed out three additional "anomalies" that would arise if the contrary interpretation were adopted. *See Teles de Menezes*, 156 F.4th at 15–18. First, the interpretation would, in effect, "penalize[e] a parent's naturalization." *Id.* at 15. Second, it would "defeat one of [CSPA's] most important purposes," which is to protect "the subset of beneficiaries who move from [the F2A category to the IR category]" from aging out. *Id.* at 16. And third, "adult sons and daughters would receive a benefit denied to minor sons and daughters, notwithstanding that the family-based visa system generally preferences child beneficiaries." *Id.* at 17. Even in light of Defendants' arguments otherwise, the Court discerns no basis for departing from the textual analysis of these circuit courts of appeals. The Court holds that the term "age" in 8 U.S.C. § 1151(f)(2) incorporates the age-reduction formula enumerated in 8 U.S.C. § 1153(h)(1). Accordingly, Ms. Rennie's Motion for Summary Judgment (Dkt. 38) is granted and Defendants' Motion for Summary Judgment (Dkt. 34) is denied.

## ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED THAT**:

1. Defendants' Motion for Summary Judgment (Dkt. 34) is **DENIED**;

2. Plaintiff Garmai Rennie's Motion for Summary Judgment (Dkt. 38) is **GRANTED**; and

3. Defendants are **ORDERED** to instruct U.S. Citizenship and Immigration Services and the National Visa Center to reclassify Ms. Rennie's application on Mr. Fumbah's behalf as an application for an immediate relative visa.

**Let judgment be entered accordingly.**

13

Date: August 5, 2026

*s/Katherine M. Menendez*
Katherine M. Menendez
United States District Judge